# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINONA WEATHERS,<br><br>    Plaintiff,<br><br>v.<br><br>M. HAGEMEISTER-MAY, et al.,<br><br>    Defendants. | Case No. 1:13-cv-01932-AWI-MJS (PC)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 1)**<br><br>**AMENDED PLEADING DUE IN THIRTY (30) DAYS** |

Plaintiff Winona Weathers is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Before the Court for screening is Plaintiff's complaint. For the reasons set forth below, the Court finds the complaint fails to state a cognizable claim and ORDERS it DISMISSED with leave to amend.

**I.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is

immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 667-68.

## III. PLAINTIFF'S ALLEGATIONS

Plaintiff claims Defendants refused to allow her to wear personal boots while

2

working at the Prison Industry Authority (PIA)[1] fabric facility at Central California Women's Facility in Chowchilla, California (CCWF), and reassigned her to a different PIA facility when she refused to wear state issued boots. She claims these actions violated the Eighth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act (ADA), and the Armstrong Remedial Plan.

Plaintiff names as Defendants (1) Hagemeister-May, PIA Superintendent at CCWF, (2) Lasik, PIA Supervisor at CCWF, (3) Johnson, CCWF Warden, (4) Lozano, California Department of Corrections and Rehabilitation ("CDCR") Chief of Appeals, (5) Beard, CDCR Director.

More specifically, Plaintiff complains that:

She was assigned to the PIA fabric facility at CCWF. The PIA required all workers to wear state boots. It appears Plaintiff held accommodation chrono's limiting her job assignments to those not requiring "hard shoes" and "black boots." Her request to PIA Superintendent Hagemeister-May to wear personal boots rather than state boots, which had "nearly crippled" her in the past (ECF No. 1, at 7) was denied even though Hagemeister-May knew Plaintiff would suffer extreme pain from state boots.

Plaintiff filed an administrative (Form 602) appeal of Defendant Hagemeister-May's denial. The appeal was denied by Defendant Johnson at the second level. Defendant Johnson violated CDCR policy by not specifying the date of denial. The appeal was denied at the third level by Defendant Lozano. Plaintiff reiterated her request in a letter to PIA Supervisor Lasik, but received no response. The PIA did not consistently enforce its state boot requirement at the fabric facility. Some inmates were fired for not wearing state boot at work; others were allowed to work in personal boots.

Plaintiff was re-assigned to a PIA dental facility job because she refused to wear state boots. The dental job was not comparable in pay or opportunity and so the assignment was contrary to CDCR policy.

---

[1] The Court takes notice the PIA exists within the California Department of Corrections and Rehabilitation, an agency of the State of California. See CAL. PENAL CODE § 2800.

Plaintiff fears Defendants will retaliate against her because of this lawsuit. In September 2012, her accommodation chrono was changed to provide for orthotic shoes. This, she says, "guarantee[s] [her] placement back into PIA fabric would never happen." (ECF No. 1, at 8.)

Plaintiff seeks (1) declaratory relief, (2) an affirmative injunction that Defendants stop all selective discrimination through the CDCR, and (3) monetary damages.

**IV.    ANALYSIS**

    **A.    Failure To Link Defendant Beard**

A § 1983 plaintiff must demonstrate that each defendant personally participated in the deprivation of her rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of a defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 129 S.Ct. at 1948. Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, a plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions. Id.

Plaintiff claims Defendant Beard is responsible for the alleged violations because of his position as CDCR Director. However, Plaintiff does not explain how Beard personally acted or failed to act so as to violate her rights. She does not allege any rights violation resulted from a policymaking decision by Defendant Beard, Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011) or from a persistent and widespread CDCR practice linked to him. Hafer v. Melo, 502 U.S. 21, 25 (1991); see also Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

If Plaintiff chooses to amend, she should provide factual detail demonstrating what Defendant Beard did or did not do when and why and how her rights were violated as a result.

**B.     No Cruel And Unusual Punishment Claim**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See Id.

      1.     Serious Deprivation

In determining whether a deprivation is sufficiently serious within the meaning of the Eighth Amendment, "the circumstances, nature, and duration" of the deprivation must be considered. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

Plaintiff provides no facts which might support a claim that wearing state boots at work –apparently required for safety purposes- caused her severe pain and placed her safety at risk. Her statement that she was "nearly crippled" by such boots and that a fellow inmate suffered a toe injury from them is not enlightening in these regards.

      2.     Culpable State of Mind

Defendants must act with a sufficiently culpable state of mind, that of "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 303 (1991); Johnson, 217 F.3d at 733. A

5

1  prison official acts with deliberate indifference if he knows of and disregards an
2  excessive risk to the prisoner's health and safety. Farmer, 511 U.S. at 837.
3        Apparently, Defendants did not force Plaintiff to wear state boots. Rather, they
4  simply denied her the opportunity to work in the fabric facility unless she wore safe
5  shoes. She has not shown a constitutional right to work in the fabric facility and to
6  disregard prison rules for protection of workers in that facility. Nothing suggests
7  Defendants forced her to wear the state boots in in disregard of a known risk to Plaintiff.
8        **C.**    **No Equal Protection Claim**
9        The Equal Protection Clause of the Fourteenth Amendment requires that persons
10 who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center,
11 Inc., 473 U.S. 432, 439 (1985). This requires Plaintiff show she was intentionally
12 discriminated against because of membership in a constitutionally suspect class,
13 Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702–03 (9th
14 Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), or that she was
15 treated differently (disparately) from those similar to her for no valid purpose. Engquist
16 v. Oregon Department of Agriculture, 553 U.S. 591, 601–02 (2008); Village of
17 Willowbrook v. Olech; 528 U.S. 562, 564 (2000).
18       1.    No Suspect Class Claim
19     Nothing alleged by Plaintiff suggests suspect class discrimination. Even if she
20 pleads disability, the disabled do not constitute a suspect class for equal protection
21 purposes. Pierce v. County of Orange, 526 F.3d 1190, 1225 (9th Cir.2008), citing Lee v.
22 City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001). Plaintiff does not state a claim
23 under protected class theory.
24       2.    No Disparate Treatment Claim
25     Plaintiff claims she was treated differently from other inmate employees at the
26 PIA fabric facility. She does not explain how and why these other inmates were situated
27 similarly to her. For instance it is unclear when these inmates worked at PIA, whether
28 their duties subjected them to the state boot requirement, whether they held any

relevant medical order or accommodation chrono or other authorization, and whether staff offered any explanation for deviating from otherwise applicable PIA requirements for wearing state boots. Plaintiff makes no factual showing that Defendants' were motivated other than by institutional purposes, namely inmate worker safety.

Plaintiff does not state an equal protection claim under either protected class theory or disparate treatment theory.

### D. No Americans With Disabilities Act (ADA) Claim[2]

Title II of the Americans with Disabilities Act (ADA) "prohibit[s] discrimination on the basis of disability."[3] 42 U.S.C. § 12132; Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [she] is a qualified individual with a disability, (2) [she] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of [her] disability." Lovell, 303 F.3d at 1052.

#### 1. No Individual Liability

Plaintiff may not pursue her ADA claim against the individual defendants named in the complaint. There is no individual liability under ADA Title II. See Heinke v. County of Tehama Sheriff's Dept., No. CVI S-12-2433 LKK/KJN, 2013 WL 3992407, at *7 (E.D. Cal. Aug. 1, 2013).

Plaintiff may name the appropriate entity or state officials in their official capacities, but she may not name individual prison employees in their personal

---

[2] Plaintiff's claim is properly analyzed under Title II of the ADA rather than ADA Title I (42 U.S.C. 12112) because the allegations suggest her PIA employment was pursuant to a program structured by the prison, rather than pecuniary in nature. See Castle v. Eurofresh, 731 F.3d 901, 907-08 (9th Cir. 2013) (inmate obligated by state law to work is not "employed" by state contractor for ADA purposes); Coupar v. U.S. Dept. of Labor, 105 F.3d 1263, 1265 (9th Cir. 1997) (prisoner not an employee within the meaning of the whistleblower provisions of the Clean Air Act and the Toxic Substances Control Act); Hale v. State of Arizona, 993 F.2d 1387 (9th Cir. 1993) (inmates working for government controlled entities not employees for purposes of the Fair Labor Standards Act). Additionally, there are no facts showing Plaintiff first filed a discrimination charge with the Equal Employment Opportunity Commission. 42 U.S.C. § 12117(a); see Young v. Lehman, 171 Fed.Appx. 625 (9th Cir. 2006).

[3] Title II of the ADA does not apply to employment. Zimmerman v. Oregon Dep't of Justice, 170 F.3d 1169, 1178 (9th Cir. 1999).

capacities.

### 2. No Disability

Plaintiff believes she is disabled, but does not allege facts explaining her basis for so alleging. Under the ADA, a disability is an impairment substantially limiting one or more of the major life activities. Hale v. King, 642 F.3d 492, 500 (5th Cir. 2011), citing Americans with Disabilities Act of 1990, § 3(1)(A), 42 U.S.C.A. § 12102(1)(A). Plaintiff does not state the nature, severity, frequency, duration, and long term impact of impairment. Nor does it appear Plaintiff has a record of such impairment, or that Defendants regarded Plaintiff as disabled for purposes of the ADA. Hale, 642 F.3d at 502. It appears from the accommodation chrono's included with the pleading that Plaintiff's job assignments were limited to "no hard shoes" (ECF 1 No. at 32) and "no black boots" (Id. at 34). These chrono's do not alone suggest substantial limitation of major daily activities.

### 3. No Programmatic Exclusion or Discrimination

Plaintiff does not explain how and why her accommodation chrono's precluded her workplace use of state boots or required her use of personal boots. She does not describe the state boots in any detail (hard, black, or otherwise), and whether and why her chrono's required her to use one or the other in the workplace. It appears Plaintiff, rather than a health care provider, decided against use of the state boots and in favor of personal boots in the workplace. (See Id. at 27.)

Additionally, Plaintiff does not claim she was excluded from the PIA program. She worked at the PIA dental facility upon reassignment from the PIA fabric facility. If Plaintiff believes the PIA program entitled her to work at the fabric facility rather than some other PIA facility, she does not explain the basis for her belief.

### 4. No Intent to Discriminate

Plaintiff believes Defendants intended to discriminate against her because Defendant Hagemeister-May "had a personal problem" with her (ECF No. 1 at 8), and her personal boots were of "better quality" than the state boots. (Id.) As plead, this belief

8

appears to rest exclusively on surmise and conjecture. No facts alleged suggest a discriminatory mind set, or that the state boot requirement was other than a reasonable and legitimate safety measure. Defendants' alleged refusal to allow the personal boots, without more, does not suggest intent to discriminate against Plaintiff's foot condition.

Plaintiff has not shown Defendants acted "by reason of" and with "deliberate indifference to" her disability. Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997).

### 5. No Monetary Damages

Plaintiff may not recover monetary damages under the ADA absent a showing of intentional discrimination, and the standard for intentional discrimination is deliberate indifference. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir.2001). For the reasons stated, Plaintiff has not shown Defendants acted with deliberate indifference.

### 6. No Claim under Armstrong Remedial Plan[4]

Plaintiff must pursue assistance due under the Armstrong Plan "via the consent decree or through class counsel." Crayton v. Terhune, No. C 98–4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept.17, 2002). Plaintiff may not sue for damages in this action solely on the basis that Defendants allegedly violated the Armstrong Remedial Plan.

In summary, for the reasons stated, Plaintiff fails to state a claim under the ADA. If Plaintiff chooses to amend, she should set forth sufficient facts suggesting named Defendants excluded her from participation in or otherwise discriminated against her with regard to programs at CCWF, by reason of her disability, causing harm.

### E. No Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against

---

[4] The Armstrong Remedial Plan refers to a remedial order issued in Armstrong v. Davis, No. CV94-2307-CW, by the District Court for the Northern District of California to enjoin practices that discriminated against disabled inmates in California Prisons. See Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001); Armstrong v. Wilson, 124 F.3d 1019 (9th Cir. 1997) (affirming order requiring submission of a remedial plan for CDCR's compliance with the Americans with Disabilities Act, 42 U.S.C. §§ 12131–34, as well as the Rehabilitation Act of 1973, 29 U.S.C. § 749).

an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of her First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff states she fears retaliation and suggests her accommodation chrono was changed to allow orthotic shoes in retaliation for her inmate appeal and to prevent her thereafter from working in the PIA fabric facility. (See ECF No. 1 at 36.)

However, Plaintiff does not attribute the chrono change to any named Defendant or demonstrate that her inmate appeal, rather than legitimate correctional goals, was a "substantial or motivating factor behind the [chrono change] " Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir.2009), quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). She does not allege facts showing that the chrono change was adverse to her participation in the PIA program. In short, nothing suggests the alleged change in Plaintiff's accommodation chrono to orthotic shoes is other than consistent with institutional medical policies and practices and motivated by factors totally unrelated to Plaintiff's alleged protected activity.

Plaintiff does not state a retaliation claim.

### F. No Administrative Grievance Process Claim

Plaintiff may wish claim improper handling and disposition of her administrative appeal. However, Plaintiff may not assert a constitutional violation based solely on such a claim.

Prison staff actions in responding to Plaintiff's prisoner grievances alone cannot give rise to any claim for relief under § 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993), citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (D.C. Ill. 1982). A prisoner does not have a claim of entitlement to a grievance procedure. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Ramirez v. Galarza, 334 F.3d 850, 860 (9th Cir. 2003).

1    Plaintiff may not state a due process claim arising solely from processing and
2 denial of administrative grievances. Leave to amend such a claim is futile and denied on
3 that basis.

4    **G.    No Claim For Injunctive Relief**

5    Injunctive relief, whether temporary or permanent, is an "extraordinary remedy,
6 never awarded as of right." Winter v. Natural Res. Defense Council, 555 U.S. 7, 22
7 (2008). To prevail, the party seeking injunctive relief must show either "(1) a likelihood of
8 success on the merits and the possibility of irreparable injury, or (2) the existence of
9 serious questions going to the merits and the balance of hardships tipping in [the
10 moving party's] favor." Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc.,
11 762 F.2d 1374, 1376 (9th Cir. 1985), quoting Apple Computer, Inc. v. Formula
12 International, Inc., 725 F.2d 521, 523 (9th Cir. 1984); see City of Los Angeles v. Lyons,
13 461 U.S. 95, 101-102 (1983) (plaintiff must show "real and immediate" threat of injury).

14    Plaintiff seeks an injunction prohibiting Defendants from selective discrimination
15 throughout the CDCR. Plaintiff does not identify any system-wide official policy or
16 practice that violates her rights. She has not stated any cognizable claim or relative
17 hardship demonstrating immediate threat of harm.

18    Accordingly, her complaint does not state a claim for injunctive relief. If Plaintiff
19 chooses to amend, she must allege facts showing a need for and entitled to injunctive
20 relief under the above standards.

21 **V.    CONCLUSIONS AND ORDER**

22    Plaintiff's complaint does not state a claim for relief under § 1983. Given the facts
23 alleged in her original pleading, i.e., the fact her claim appears based solely on
24 Defendant's making her employment in the fabric center subject to her wearing
25 mandated safety boots,  **it appears unlikely she will be able to do so**.

26    Nevertheless, the Court will grant her one  opportunity to file an amended
27 complaint to see if there are facts which can be alleged to bring it within the pleading
28 standards outlined above.. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir.  2000); Noll v.

Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff opts to amend, she must demonstrate that the alleged wrongful acts resulted in a deprivation of her constitutional rights. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to state a claim that is plausible on its face." Id. at 1949, quoting Twombly, 550 U.S. at 555. Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of her rights. Jones, 297 F.3d at 934.

Plaintiff should note that although she has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order and focus her efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint", refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of her complaint filed November 26, 2013,

2. Plaintiff's complaint is DISMISSED for failure to state a claim upon which relief may be granted,

3. Plaintiff shall file an amended complaint within thirty (30) days from service of this order, and

4. If Plaintiff fails to file an amended complaint in compliance with this order, the undersigned will recommend this action be dismissed, with prejudice, for failure to state a claim and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Di Vittorio 658 F.3d 1090 (9th Cir. 2011).

IT IS SO ORDERED.

Dated:   January 28, 2014         /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE