UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINONA WEATHERS,<br><br>          Plaintiff,<br><br>     v.<br><br>M. HAGEMEISTER-MAY, et al.,<br><br>          Defendants. | Case No.  1:13-cv-01932-AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS AMENDED COMPLAINT WITHOUT LEAVE TO AMEND FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF No. 12)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

Plaintiff Winona Weathers is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. She has declined Magistrate Judge jurisdiction. (ECF No. 5.)  Plaintiff's original complaint was dismissed for failure to state a claim. (ECF No. 7.)  Plaintiff's Amended Complaint (ECF No. 12) is before the Court for screening.

**II.     PLEADING STANDARD**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method

1

for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 667-68.

### III.     PLAINTIFF'S ALLEGATIONS

Plaintiff claims Defendants refused to allow her to wear personal boots while working at the Prison Industry Authority (PIA)[1] fabric facility at Central California Women's Facility in Chowchilla, California (CCWF), and reassigned her to a different PIA facility when she refused to wear state-issued boots.

Plaintiff names as Defendants (1) Hagemeister-May, PIA Superintendent at CCWF, (2) Lasik, PIA Supervisor at CCWF, (3) Johnson, CCWF Warden, (4) Lozano,

---

[1] The Court takes notice the PIA exists within the California Department of Corrections and Rehabilitation, an agency of the State of California. See CAL. PENAL CODE § 2800.

California Department of Corrections and Rehabilitation ("CDCR") Chief of Appeals, (5) Beard, CDCR Director.

More specifically, Plaintiff complains that:

She has had chronic foot problems, including bunions and weak arches, since childhood. She must wear orthotic arch supports to prevent pain and the collapse of her arches. She held accommodation chromos allowing her to wear orthotics and a knee brace and specifying that she could not wear "hard shoes." The boots she typically wears are Timberland work boots, which are spacious enough to accommodate her orthotics and provide her feet with sufficient support. Plaintiff concedes that no one has diagnosed her with a disability.

Plaintiff was assigned to work at the PIA fabric facility as a seamstress. The PIA requires all workers to wear state boots. Plaintiff signed a "PIA Factory Inmate Rules" sheet acknowledging the state boot requirement. According to Plaintiff, her orthotics do not fit in the state boots, and even without orthotics, Plaintiff cannot wear the state boots without extreme pain. She was not permitted to work at PIA Fabric unless she wore the state boots.

Plaintiff filed a 602 appeal requesting to keep her position at PIA Fabric and to be permitted to wear her personal boots to work, and at the first level was interviewed by Defendant Hagemeister-May. Plaintiff offered to show Hagemeister-May her personal boots, an offer Defendant apparently declined. Instead, Hagemeister-May denied Plaintiff's request to keep the PIA Fabric job after reviewing Plaintiff's Accomodation Chronos and a "Medical Verification Response" indicating the medical department does not approve personal shoes for use at work.

Plaintiff's appeal was denied at the second level by Defendant Johnson, whose

3

response indicated that prison staff had compared Plaintiff's personal boots to the state boots, and concluded that Plaintiff's personal boots were "soft leather, not hard leather which is needed for safety reasons in the PIA environment." Johnson concluded that Plaintiff was not "eligible to remain assigned to PIA due to [her] inability to wear a hard leather State work boot."

Plaintiff's appeal was denied at the third level after Defendant Lozano concluded that "appellant could not safely work in the PIA workplace while wearing" her personal boots.

Plaintiff alleges that the state boot requirement is not consistently enforced. She cites three other inmates who have apparently secured exemptions from the policy. The first is a woman who broke her toe on the job, but was subsequently permitted to come to work with an open-toed cast or boot. The second is a woman whose feet were too big for the state boot sizes, and the third is a woman whose feet were too narrow for the state boots. The two latter women were permitted to have work boots custom-made for them.

Plaintiff was re-assigned to a PIA dental facility job because she refused to wear state boots. The dental job was apparently not comparable in pay or opportunity.

Plaintiff alleges she was retaliated against for filing the 602 appeal. She claims she received a phone call in November 2012 – while her appeal was still pending – from an unknown male, who asked her if she wanted to return to work at PIA Fabric. After Plaintiff said yes, the man said he would call back to discuss options. Instead of calling back, Plaintiff was told to report to the infirmary, where she was told that her personal boot chrono would be revoked and she would instead be issued an orthotic shoe chrono. Plaintiff asserts that this change of chronos guarantees that she will not have

the opportunity to return to PIA Fabric.

Plaintiff seeks (1) declaratory relief, (2) an affirmative injunction that Defendants stop all selective discrimination through the CDCR, and (3) monetary damages.

## IV. ANALYSIS

Plaintiff claims that failing to exempt her from the state boot requirement - thereby prohibiting her from working at PIA Fabric - violates the First, Eighth, and Fourteenth Amendments, as well as the the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and the Fair Labor Standard Act. She also alleges that Defendants' actions violate state law.  As the court explains in detail below, Plaintiff has not adequately linked all defendants to her claims, and her federal claims are not cognizable. There is no evidence that Plaintiff has complied with the claim presentation requirement for filing state law claims, so the Court will not consider them.   The Court will recommend that Plaintiff's complaint be dismissed with prejudice.

### A. Failure to Link Defendant Beard

A § 1983 plaintiff must demonstrate that each defendant personally participated in the deprivation of her rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of a defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 129 S.Ct. at 1948. Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, a plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions. Id.

Plaintiff was advised in her first complaint that she failed to link Beard directly to

her allegations of unconstitutional conduct. She has not corrected this deficiency in her amended pleadings. Beard is a very high-ranking CDCR official. Plaintiff does not allege facts tending to show that he knew or should have known about, much less had any direct involvement in making, decisions about Plaintiff or the attire she or other individual inmates can or cannot wear on the job. She does not allege any rights violation resulted from a policymaking decision by Defendant Beard, Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011) or from a persistent and widespread CDCR practice linked to him. Hafer v. Melo, 502 U.S. 21, 25 (1991); see also Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

Accordingly, the Court will recommend that Plaintiff's claims against Beard be dismissed with prejudice.

**B.     No Cruel and Unusual Punishment Claim**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

Prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety," Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), and may not deny inmates "the minimal civilized measure of life's necessities." Hudson v. McMillian, 503 U.S. 1, 20 (1992). Nonetheless, conditions of confinement may be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981) A prison official violates the Eighth Amendment when two requirements are met:

(1) objectively, the official's act or omission must deny the inmate "the minimal civilized measure of life's necessities;" and (2) prison officials subjectively acted with deliberate indifference to his health and safety. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)(citing Wilson v. Seiter, 501 U.S. 294, 303-303 (1991)); Rhodes, 452 U.S. at 347. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See Farmer, 511 U.S. at 834. ).

In the prison work context, the Eighth Amendment is only violated "when a prisoner employee alleges that a prison official *compelled* him to 'perform physical labor which was beyond his strength, endangered his life or health, or caused undue pain.'" Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006)(quoting Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994))(emphasis added).

### 1. Serious Deprivation

In determining whether a deprivation is sufficiently serious within the meaning of the Eighth Amendment, "the circumstances, nature, and duration" of the deprivation must be considered. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). An occupational hazard is "sufficiently serious" under the Eighth Amendment only when it is exacerbated by an additional factor: for instance, the presence of defective machinery in the prison workplace will not, alone, violate an inmate worker's Eighth Amendment rights, but a machine whose defect is known and which the prisoner must use anyway, may. Morgan, 465 F.3d at 1046-1047.

Here, Plaintiff has not alleged an occupational hazard at her PIA Fabric job. Although she alleges that the state boots were painful, she nowhere alleges that she was forced or compelled to wear them. In fact, Plaintiff refused to wear the boots, and eventually received a different work assignment as a result.

### 2. Culpable State of Mind

Defendants must act with a sufficiently culpable state of mind, that of "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 303 (1991); Johnson, 217 F.3d at 733. A prison official acts with deliberate indifference if he knows of and disregards an excessive risk to the prisoner's health and safety. Farmer, 511 U.S. at 837.

Defendants did not force Plaintiff to wear state boots despite her complaints about the pain they caused her. See Morgan, 465 F.3d at 1047 (prisoner required to use printing press even after he told supervisor that it was defective); Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)(prisoner required to use ladder even after he told his supervisor it was unsafe). Rather, Defendants denied Plaintiff the opportunity to work in the fabric facility unless she wore safe shoes. Nothing suggests Defendants disregarded a known risk to Plaintiff's health.

### C. No Equal Protection Claim

#### 1. Introduction

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). This requires Plaintiff to show she was intentionally discriminated against because of her membership in an identifiable group, e.g., Davis v. Prison Health Svcs., 679 F.3d 433, 442 (6th Cir. 2012)(homosexual inmate worker stated valid Equal Protection claim when he alleged he was fired because of his sexual orientation) or a constitutionally suspect class, e.g., Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004)(black inmate worker stated valid Equal Protection claim on basis of race).

In certain circumstances, a plaintiff does not have to allege membership in a

class to make an equal protection claim; that is, she may allege that "she has been irrationally singled out as a so-called 'class of one.'" Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601–02 (2008); accord Village of Willowbrook v. Olech; 528 U.S. 562, 564 (2000). However, in Engquist, the Supreme Court found that public employees could *not* bring "class of one" Equal Protection claims to challenge an allegedly arbitrary termination. 553 U.S. at 604, 605. The Court based its decision in part on the "subjective and individualized" nature of employment decisions and the "significantly greater leeway [government has] in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." Id., at 599, 604. Finding that discretionary decisionmaking inheres in personnel management, the Court was cautious of turning even apparently arbitrary employment decisions into constitutional violations. Id., at 605.

This Court shares the same hesitancy about recognizing "class of one" claims in the prison work context, especially because decisions in this district have already extended Engquist to this arena. See Prater v. Romero, No.2:12-cv-2632 2012 WL 5906891, at *2, n.1 (E.D. Cal. Nov. 26, 2012); Davis v. Villagrana, No. 1:09-cv-01897 2011 WL 318328, at *3 (E.D. Cal. Feb. 1, 2011). There are significant differences between civilian government employees and prison workers, of course, and for many federal purposes, inmates are not considered to be "employees" at all because of the punitive rationale for their labor. See, e.g., Castle v. Eurofresh, 731 F.3d 901, 906 n.9 (9th Cir. 2013)(collecting cases). However, if the government has "more leeway" with agency employees than with private citizens, then it unquestionably has more leeway with prisoners than with either group. It is well-established that while an inmate does not forfeit all constitutional rights upon incarceration, "many of the liberties and

privileges enjoyed by other citizens must be surrendered by the prisoner." Overton v. Bazzetta, 539 U.S. 126, 131 (2003). Moreover, just as a government agency must balance "a wide array of factors that are difficult to articulate and quantify" in making employment decisions, Engquist, 553 U.S. at 604, so must a prison work authority.  For these reasons, the Court finds that a "class of one" Equal Protection claim is not an available form of redress for an inmate who has received allegedly arbitrary treatment at his or her prison work assignment.

### 2. No Suspect or other Identifiable Class Claim

Plaintiff alleges that she was discriminated against on the basis of disability. While disability is not a suspect classification, Pierce v. County of Orange, 526 F.3d 1190, 1225 (9th Cir.2008), citing Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001), it is an identifiable class, and discrimination on the basis of being disabled may violate the Equal Protection clause if not rationally related to legitimate legislative goals. Id. Here, as an initial matter, Plaintiff has not pleaded sufficient facts to establish that she is disabled, nor does the administrative appeal record reflect that her termination from PIA Fabric was due to her foot condition.  Instead, her termination was based on her refusal to wear state boots and an inspection that revealed her personal boots were too soft to be safe on the job.

Even if Plaintiff's foot condition could be considered a disability, however, she has not pleaded sufficient facts to indicate that the state boot policy, which is applied to all inmates, either excludes individuals with foot conditions from PIA Fabric, or favors individuals without foot conditions.  To the contrary, Plaintiff cites another inmate who broke her toe and was allowed to come to work in a cast, which would seem to support the conclusion that prison officials do not prevent individuals with foot conditions from

10

working at PIA Fabric. The fact that Plaintiff did not also receive an exemption from the state boot requirement does not mean she was discriminated against: while exempting one inmate from the boot requirement and not another could potentially be arbitrary, it is not evidence of discrimination against individuals with foot conditions.

### 2. "Class of One" Claim

Because Plaintiff has not alleged facts to indicate she was discriminated against on the basis of her membership in a group, the only potential Equal Protection claim she could bring would be a "class of one" claim. As mentioned above, however, "class of one" Equal Protection claims are not available to prison workers. See Engquist, 553 U.S. at 601–02; Prater, 2012 WL 5906891, at *2, n.1; Davis, 2011 WL 318328, at *3. Therefore, Plaintiff fails to state a cognizable claim on Equal Protection grounds.

### D.   No Americans with Disabilities Act (ADA) Claim[2]

Title II of the Americans with Disabilities Act (ADA) "prohibit[s] discrimination on the basis of disability."[3] 42 U.S.C. § 12132; Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [she] is a qualified individual with a disability, (2) [she] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of [her] disability." Lovell, 303 F.3d at 1052.

---

[2] Plaintiff's claim is properly analyzed under Title II of the ADA rather than ADA Title I (42 U.S.C. 12112) because the allegations suggest her PIA employment was pursuant to a program structured by the prison, rather than pecuniary in nature. See Castle v. Eurofresh, 731 F.3d 901, 907-08 (9th Cir. 2013) (inmate obligated by state law to work is not "employed" by state contractor for ADA purposes); Coupar v. U.S. Dept. of Labor, 105 F.3d 1263, 1265 (9th Cir. 1997) (prisoner not an employee within the meaning of the whistleblower provisions of the Clean Air Act and the Toxic Substances Control Act); Hale v. Arizona, 993 F.2d 1387 (9th Cir. 1993) (inmates working for government controlled entities not employees for purposes of the Fair Labor Standards Act). Additionally, there are no facts showing Plaintiff first filed a discrimination charge with the Equal Employment Opportunity Commission. 42 U.S.C. § 12117(a); see Young v. Lehman, 171 Fed.Appx. 625 (9th Cir. 2006).

[3] Title II of the ADA does not apply to employment. Zimmerman v. Oregon Dep't of Justice, 170 F.3d 1169, 1178 (9th Cir. 1999).

11

**1. No Disability**

Plaintiff believes she is disabled, but does not allege facts explaining her basis for so alleging. Under the ADA, a disability is an impairment substantially limiting one or more of the major life activities. Hale v. King, 642 F.3d 492, 500 (5th Cir. 2011), citing Americans with Disabilities Act of 1990, § 3(1)(A), 42 U.S.C.A. § 12102(1)(A). Although Plaintiff alleges that she has had foot problems since childhood, and that she now requires orthotics to prevent her arches from collapsing, Plaintiff has not described how she is limited in her daily activities by these problems, nor does it appear that Defendants regarded her as disabled for purposes of the ADA. See Hale, 642 F.3d at 502. Plaintiff, moreover, concedes that she does not have any medical records that state she is disabled. (ECF No. 12, at 7.) Her accommodation chronos indicate she was permitted to wear orthotics, a knee brace, and could not wear "hard shoes." Without more, however, these chronos do not suggest substantial limitation of major daily activities.

**2. No Programmatic Exclusion**

Plaintiff does not explain how and why her accommodation chrono precluded her workplace use of state boots or authorized her to wear personal boots on the job. Indeed, the first-level response to Plaintiff's 602 appeal references a Medical Verification Response[4] indicating that "medical does not approve personal shoes" for use in the workplace. (ECF No. 12, at 13). Thus, it appears that Plaintiff, rather than a health care provider, decided against use of the state boots and in favor of personal boots in the workplace. Moreover, Plaintiff has not shown she was excluded from the PIA program. She worked at the PIA dental facility upon reassignment from the PIA

---

[4] Plaintiff did not include this document with her Amended Complaint.

Fabric. She has not shown that she had any right or entitlement to work at PIA Fabric as opposed to any other PIA facility.

### 3. No Intent to Discriminate

Plaintiff believes Defendants intended to discriminate against her because Defendant Hagemeister-May "had a personal problem" with her.  As pleaded, this belief appears to rest exclusively on surmise and conjecture. No facts alleged suggest a discriminatory mindset, or that the state boot requirement was other than a reasonable and legitimate safety measure. Defendants' alleged refusal to allow the personal boots, without more, does not suggest intent to discriminate against Plaintiff's foot condition.

Plaintiff has not shown Defendants acted "by reason of" and with "deliberate indifference to" her disability. Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997).

### 4. Conclusion

Because Plaintiff has failed to satisfy any element of an ADA claim, the Court will recommend that her ADA claims be dismissed with prejudice.

**E.     No Retaliation Claim**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of her First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff claims that Defendants took adverse action against her when they changed her chrono from "personal boots" to "orthopedic shoes." (ECF No. 12, at 19.) She claims the chrono change precludes her from ever working at PIA Fabric because

13

her new chrono only allows her to wear *shoes* whereas PIA Fabric workers must wear *boots.* The Court rejects this argument: the "PIA Factory Inmate Rules" state that the only footwear inmates may wear at work is "state-issued boots."  (ECF No. 12, at 45.) Thus, it is irrelevant whether Plaintiff's chronos authorize her to wear orthotic shoes or personal boots with orthotics in them; she would not be able to wear either to work at PIA Fabric absent some kind of exemption.  Moreover, as far as the Court understands, a chrono *authorizes* an inmate to use a particular accommodation, but does not *force* the inmate to do so. Thus, nothing – other than the Plaintiff's dislike for the state boots – would prevent Plaintiff from wearing state boots at work and her orthotic shoes at other times.  Therefore, the Court concludes that the chrono change does not amount to adverse action sufficient to support a retaliation claim, and will recommend that this claim be dismissed with prejudice.

### F.     No Fair Labor Standards Act or Title VII Claims

Plaintiff alleges for the first time in her amended complaint that Defendants' conduct violates the Fair Labor Standards Act and Title VII of the Civil Rights Act of 1964. These claims are not cognizable for a number of reasons.

#### 1.  Title VII

Title VII only prohibits discrimination on the basis of "race, color, religion, sex, or national origin," not disability. 42 U.S.C. § 2000e-2.  In addition, prior to filing a Title VII claim in federal court, a plaintiff must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission. 42 U.S.C. § 2000e-5(f)(1); see also, e.g., Baker v. McNeil Island Corr. Ctr., 859 F.2d 124, 125 (9th Cir. 1988). Plaintiff neither alleges that she has obtained such a letter, nor has she included one with either of her complaints.  Plaintiff has not raised a cognizable Title VII claim.

### 2. FLSA

Inmates required by state law to work as a condition of their incarceration are not considered employees for the purposes of several statutes, including the Fair Labor Standards Act. See FN 2, *supra*; Castle, 731 F.3d at 906 (citing Hale v. Arizona, 993 F.2d 1387, 1395 (9th Cir. 1993), which held that Arizona prisoners were not employees entitled to be paid minimum wage under FLSA because they were obligated to work under state hard labor statute); Burleson v. California, 83 F.3d 311, 313 (9th Cir. 1996)(extending Hale's rationale to PIA workers in California). California inmates are required by law to work as a condition of their imprisonment. Cal. Penal Code § 2700; Burleson, 83 F.3d at 313. Plaintiff is a California inmate, and therefore required to work under California law, so she is not an employee for FLSA purposes, and thus may not bring suit pursuant to this statute.

### G.     State Claims

Plaintiff makes conclusory allegations in her amended complaint that Defendants have committed several apparent state law torts, including extortion, negligence, intentional and/or negligent infliction of emotional distress, tortious interference with Plaintiff's life and finances, and negligent interference with Plaintiff's emotional distress. (ECF No. 12, at 11.) The California Tort Claims Act requires plaintiffs to present tort claims against public entities to the California Victim Compensation and Government Claims Board, no more than six months after the cause of action accrues. CAL. GOVT. CODE § 905.2, 910, 911.2, 945.4, 950-950.2.  Presentation of a written claim, and action on or rejection of the claim, are prerequisites to filing suit. Castaneda v. CDCR, 212 Cal. App. 4th 1051, 1061 (Cal. Ct. App. 2013); Easter v. CDC, 694 F.Supp.2d 1177, 1185-1186 (S.D. Cal. 2010). Here, Plaintiff has not alleged compliance with the Act, so

15

the Court declines to address the validity of her state tort claims.  If she chooses to pursue such claims, she must first present them to the Victim Compensation and Government Claims Board.

In any event, the Court will not exercise supplemental jurisdiction over a state law claim absent a cognizable federal claim. 28 U.S.C. § 1367(c)(3); <u>Herman Family Revocable Trust v. Teddy Bear</u>, 254 F.3d 802, 805 (9th Cir. 2001); <u>Brown v. Lucky Stores, Inc.</u>, 246 F.3d 1182, 1189 (9th Cir. 2001).  "When . . . the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." <u>Les Shockley Racing v. National Hot Rod Ass'n</u>, 884 F.2d 504, 509 (9th Cir. 1989).  Here, the Court is dismissing all of Plaintiff's federal claims with prejudice.  If, following compliance with the Tort Claims Act, Plaintiff elects to pursue her state claims further, she must do so in state, not federal, court, as this Court will no longer have supplemental jurisdiction.

## V.     CONCLUSION AND RECOMMENDATION

Plaintiff's amended complaint fails to state any cognizable claim.  She was previously advised of pleading deficiencies and afforded the opportunity to correct them.  She failed to do so.  Further leave to amend appears futile and should be denied.

The undersigned recommends that the action be dismissed with prejudice, that dismissal count as a strike pursuant to 28 U.S.C. § 1915(g), and that the Clerk of the Court terminate any and all pending motions and close the case.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14)** days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a

16

copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   April 29, 2015                    /s/ *Michael J. Seng*
                                                                                  UNITED STATES MAGISTRATE JUDGE